# IN THE CRIMINAL COURT FOR BLOUNT COUNTY, TENNESSEE
## AT MARYVILLE

| | |
|---|---|
| **GARY W. SUTTON,** Petitioner | ) ) ) No. C-14433 ) (CAPITAL CASE) ) (POST-CONVICTION) ) (MOTION TO REOPEN) ) |
| v. | |
| **STATE OF TENNESSEE,** Respondent. | |

FILED
SEP 2 1 2016
TOM HATCHER
CIRCUIT COURT CLERK

## ORDER DENYING "MOTION TO REOPEN POST-CONVICTION PETITION"

### I. Introduction

This matter is before this Court on Petitioner's June 14, 2016, motion to reopen his petition for post-conviction relief. Petitioner, Gary W. Sutton, with the assistance of counsel, has filed this motion to reopen pursuant to Tenn. Code Ann. § 40-30-117(a)(1) claiming he is entitled to relief based upon a new rule of law as announced in *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2251 (2015). The State filed a response on July 18, 2016, asking for summary dismissal of Petitioner's motion to reopen. After reviewing the pleadings and the relevant authorities and for the reasons stated within this order, Petitioner's Motion To Reopen filed on June 14, 2016, is hereby DENIED.

### II. Procedural History

*Trial*

In September 1996, a Blount County Jury convicted Petitioner of first degree murder in connection with the February 1992 death of Tommy Mayford Griffin. The jury found the following aggravating circumstance in sentencing Petitioner to death for the

murder:

> (1) The defendant was previously convicted of one (1) or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person.

See Tenn. Code Ann. § 39-13-204(i)(2) (1991 and 1996 Supp.).

On appeal, the Tennessee Supreme Court affirmed both his convictions and sentence. *State v. Sutton*, 79 S.W.3d 458 (Tenn.), *cert. denied*, 537 U.S. 1090 (2002).

### Post-Conviction

Petitioner subsequently filed a timely petition for post-conviction relief on March 3, 2003, which was subsequently amended on June 2, 2003, and March 31, 2004. After a hearing, the post-conviction court denied the petition by order on September 1, 2004. The Court of Criminal Appeals affirmed the judgment of the post-conviction court, and the Tennessee Supreme Court denied Mr. Sutton's application for permission to appeal. *See Gary w. Sutton v. State*, 2006 WL 1472542 (Tenn. Crim. App. May 30, 2006), *perm. app. denied*, (Tenn. Oct. 2, 2006).

### Federal Habeas Corpus Proceedings

Mr. Sutton unsuccessfully sought federal habeas corpus relief in the United States District Court for the Eastern Division of Tennessee. *Gary W. Sutton v. Ricky Bell*, 683 F. Supp. 2d 640 (E.D. Tenn. 2010); and *Gary W. Sutton v. Ricky Bell*, 2011 WL 1225891 (E.D. Tenn. Mar. 30, 2011). The United States Court of Appeals for the Sixth Circuit affirmed the denial of habeas relief. *Sutton v. Carpenter*, 617 Fed. Appx. 434 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1494 (2016).

SCANNED

### III. Applicable Law

The statutes governing motions to reopen were summarized in *Harris v. State*, 102 S.W.3d 587, 590-91 (Tenn. 2003).

> Under the provisions of the Post-Conviction Procedure Act, a petitioner "must petition for post-conviction relief ... within one (1) year of the final action of the highest state appellate court to which an appeal is taken ... ." Tenn. Code Ann. § 40-30-202(a). Moreover, the Act "contemplates the filing of only one (1) petition for post-conviction relief." Tenn. Code Ann. § 40-30-202(c). After a post-conviction proceeding has been completed and relief has been denied, ... a petitioner may move to reopen only "under the limited circumstances set out in 40-30-217." Id. These limited circumstances include the following:
>
>> (1) The claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. Such motion must be filed within one (1) year of the ruling of the highest state appellate court or the United States Supreme Court establishing a constitutional right that was not recognized as existing at the time of trial; or
>> (2) The claim in the motion is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or
>> (3) The claim in the motion seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the motion must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid; and
>> (4) It appears that the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced.
>
> (Citing Tenn. Code Ann. § 40-30-217(a)(1)-(4))(now Tenn. Code Ann. § 40-30-117(a)(1)-(4)). The statute further states:
>
>> The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise. Except as specifically provided in subsections (b) and (c) [of section 102], the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expiration of the limitations period. Tenn. Code Ann. § 40-30-102(a).

The post-conviction statutes further provide

> a new rule of constitutional criminal law is announced if the result is not dictated by precedent existing at the time the petitioner's conviction became final and application of the rule was susceptible to debate among reasonable minds. A new rule of constitutional criminal law shall not be applied retroactively in a post-conviction proceeding unless the new rule places primary, private individual conduct beyond the power of the criminal law-making authority to proscribe or requires the observance of fairness safeguards that are implicit in the concept of ordered liberty.

Tenn. Code Ann. § 40-30-122. Furthermore, Petitioner asserts this decision requires retroactive application pursuant to *Welch v. United States*, 136 S. Ct. 1257 (2016).

A motion to reopen "*shall be denied* unless the factual allegations, if true, meet the requirements of [Tenn. Code Ann. § 40-30-117](a)." Tenn. Code Ann. § 40-30-117(b) (emphasis added).

## IV. Analysis

Petitioner argues he is entitled to relief pursuant to what he claims is a new rule announced in *Johnson v. United States*, 135 S. Ct. 2551 (2015). This Court disagrees.

*Johnson* addressed the federal Armed Career Criminal Act (ACCA), which provides for more severe sentences if a person convicted of being a felon in possession of a firearm has three or more convictions for a "violent felony." *See* 18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" in pertinent part as:

> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e)(2)(B) (emphasis added). Mr. Johnson argued the portion of the statute emphasized above, known as the "residual clause," was unconstitutionally vague. The Court agreed with Mr. Johnson and held:

> Deciding whether the residual clause covers a crime thus requires a court to picture the kind of conduct that the crime involves in "the ordinary case," and to judge whether that abstraction presents a serious potential risk of physical injury. *James, supra,* at 208, 127 S. Ct. 1586.[1] The court's task goes beyond deciding whether creation of risk is an element of the crime. That is so because, unlike the part of the definition of a violent felony that asks whether the crime "has *as an element* the use ... of physical force," the residual clause asks whether the crime "*involves conduct*" that presents too much risk of physical injury. What is more, the inclusion of burglary and extortion among the enumerated offenses preceding the residual clause confirms that the court's task also goes beyond evaluating the chances that the physical acts that make up the crime will injure someone. The act of making an extortionate demand or breaking and entering into someone's home does not, in and of itself, normally cause physical injury. Rather, risk of injury arises because the extortionist might engage in violence *after* making his demand or because the burglar might confront a resident in the home *after* breaking and entering.
>
> We are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges. Increasing a defendant's sentence under the clause denies due process of law.
>
> ...
>
> Two features of the residual clause conspire to make it unconstitutionally vague. In the first place, the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime. It ties the judicial assessment of risk to a judicially imagined "ordinary case" of a crime, not to real-world facts or statutory elements. How does one go about deciding what kind of conduct the "ordinary case" of a crime involves? "A statistical analysis of the state reporter? A survey? Expert evidence? Google? Gut instinct?" *United States v. Mayer,* 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing en banc). To take an example, does the ordinary instance of witness tampering involve offering a witness a bribe? Or threatening a witness with violence? Critically, picturing the criminal's behavior is not enough; as we have already discussed, assessing "potential risk" seemingly requires the judge to imagine how the idealized ordinary case of the crime subsequently plays out. *James* illustrates how speculative (and how detached from statutory elements) this enterprise can become. Explaining why attempted burglary poses a serious potential risk of physical injury, the Court said: "An armed would-be burglar may be spotted by a police officer, a private security guard, or a participant in a neighborhood watch program. Or a homeowner ... may give chase, and a violent encounter may ensue." 550 U.S., at 211, 127 S. Ct. 1586. The dissent, by contrast, asserted that

---

[1] *James v. United States,* 550 U. S. 192, 127 S. Ct. 1586, 167 L. Ed. 2d 532 (2007).

any confrontation that occurs during an attempted burglary "is likely to consist of nothing more than the occupant's yelling 'Who's there?' from his window, and the burglar's running away." *Id.*, at 226, 127 S. Ct. 1586 (opinion of SCALIA, J.). The residual clause offers no reliable way to choose between these competing accounts of what "ordinary" attempted burglary involves.

At the same time, the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony. It is one thing to apply an imprecise "serious potential risk" standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction. By asking whether the crime "*otherwise* involves conduct that presents a serious potential risk," moreover, the residual clause forces courts to interpret "serious potential risk" in light of the four enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives. These offenses are "far from clear in respect to the degree of risk each poses." *Begay*, 553 U.S., at 143, 128 S. Ct. 1581.[2] Does the ordinary burglar invade an occupied home by night or an unoccupied home by day? Does the typical extortionist threaten his victim in person with the use of force, or does he threaten his victim by mail with the revelation of embarrassing personal information? By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates.

*Johnson*, 135 S. Ct. at 2557-58.

Petitioner urges this Court to conclude *Johnson* announces a new constitutional rule of law which would require his death sentence to be set aside. He argues the prior violent felony aggravating circumstance applied in his case is analogous to the ACCA residual clause. As previously stated, however, this Court disagrees.

The Court in *Johnson* concluded its decision is limited to the residual clause and its "decision does not call into question application of the Act to ... the remainder of the Act's definition of a violent felony." *Johnson*, 135 S. Ct. at 2562. The "remainder" includes the "elements test" provision of the federal act.[3] Tennessee's prior violent felony conviction aggravating circumstance, as applied to Petitioner, required a finding that "the defendant was previously convicted of one (1) or more felonies, other than the

---

[2] *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581, 170 L. Ed. 2d 490 (2008).

[3] The "elements test" provision is the portion of the federal act which included the definition of violent felony as "any crime punishable by imprisonment for a term exceeding one year ... that ... has as an element the use, attempted use, or threatened use of physical force against the person of another" was expressly omitted from the *Johnson* decision finding the residual clause unconstitutional.

present charge, whose **statutory elements** involve the use of violence to the person." Tenn. Code Ann. § 39-13-204(i)(2) (emphasis added). The Tennessee statute focuses the court's inquiry on the elements of the predicate conviction rather than a judicially imagined hypothetical scenario as in the residual clause of the federal act.

For the reasons stated, the prior violent felony aggravating circumstance does not suffer from the vagueness problems that rendered the ACCA's Residual Clause unconstitutional. Accordingly, any new rule of law announced by *Johnson* would not warrant a new sentencing hearing in this case.

## V. Conclusion

For the reasons stated above, Mr. Sutton's motion to reopen his petition for post-conviction relief is DENIED. Mr. Sutton is indigent, so any costs associated with these proceedings are taxed to the State.

IT IS SO ORDERED this the ___21___ day of September, 2016.

David Duggan
Circuit Court Judge

**ENTERED**

SEP 21 2016

Minute Book 444
Page 278-281

### CERTIFICATE OF SERVICE

I, ___Tom Hatcher___, Clerk, hereby certify that I have mailed a true and exact copy of same to Counsel to Petitioner, Gary W. Sutton (218364), Riverbend Maximum Security Institution, 7475 Cockrill Bend Boulevard, Nashville, TN 37209, Attorney James Simmons, P.O. Box 2934, Hendersonville, TN 37077, and counsel for the State, ADA Matthew Dunn, this the 22 day of Sept., 2016.